UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NELSON A. MURRAY,

                              Plaintiff,

                    -against-

MATTHEW DUTCAVICH, et al.,

                              Defendants.

**OPINION AND ORDER**

17-CV-09121 (PMH)

PHILIP M. HALPERN, United States District Judge:

Nelson A. Murray ("Plaintiff") commenced this action on November 21, 2017 against Dutchess County ("County"), Robert Balkind ("Balkind"), Matthew Dutcavich ("Dutcavich"), James DeWitt ("DeWitt"), and Marcus Molinaro ("Molinaro" and collectively, "Defendants"). (Doc. 1). Plaintiff maintains in the First Amended Complaint, the operative pleading, that Defendants discriminated and retaliated against him on the basis of race, maintained a racially hostile work environment, and conspired to terminate him, in violation of 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.* ("Title VII"); and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"). (Doc. 18, "FAC").

Judge Karas, before whom this case proceeded prior to its reassignment to this Court, granted in part and denied in part Defendants' motion to dismiss in a September 25, 2019 Opinion and Order.[1] (Doc. 47). Specifically, Judge Karas dismissed Plaintiff's claims of disparate treatment, hostile work environment, and conspiracy. (*Id.*). Defendants filed an Answer to the FAC on August 3, 2020. (Doc. 77). Discovery on the remaining claims closed on November 1, 2021. (Doc. 93). Plaintiff, in an April 21, 2022 Stipulation, voluntarily dismissed his claims against

---

[1] This decision is available on commercial databases. *See Murray v. Dutchess Cnty. Exec. Branch*, No. 17-CV-09121, 2019 WL 4688602 (S.D.N.Y. Sept. 25, 2019).

Defendants DeWitt and Molinaro (Doc. 110), and, in a January 18, 2022 Stipulation, agreed to dismiss with prejudice all claims except for the "Third, Sixth, Ninth and Tenth Claims for Relief" as stated in the FAC, against Defendants Dutchess County, Balkind, and Dutcavich. (Doc. 120-21). Plaintiff's extant claims for relief, following the September 25, 2019 Opinion and Order on Defendants' motion to dismiss and the January 18, 2022 Stipulation, are: Section 1983 Retaliation (Count 3), Title VII Retaliation (Count 6), NYSHRL Retaliation (Count 9), and NYSHRL Aiding and Abetting (Count 10).

Pending before the Court is Defendants' motion for summary judgment seeking dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 56. (Doc. 117; Doc. 119, "Def. 56.1 Stmt."; Doc. 120; Doc. 121; Doc. 122; Doc. 123; Doc. 124; Doc. 125, "Def. Br."). Plaintiff opposed Defendants' motion (Doc. 118, "Pl. Br."; Doc. 128, "Pl. 56.1 Stmt."; Doc. 129; Doc. 130; Doc. 133; Doc. 134; Doc. 135; Doc. 140), and the motion was fully submitted with the filing of the motion, opposition, and Defendants' reply papers on September 27, 2022 (Doc. 127, "Reply").

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## **BACKGROUND**

The facts recited below are taken from Defendants' 56.1 Statement (Doc. 119, "Def. 56.1 Stmt."), Plaintiff's Rule 56.1 Statement of Supplemental Facts (Doc. 128, "Pl. 56.1 Stmt."), and the admissible evidence submitted by the parties.[2]

---

[2] During the summary judgment pre-motion conference, the Court directed that "Plaintiff shall be permitted to add evidence citations to the operative 56.1 Statement." (*See* May 10, 2022 Min. Entry). Plaintiff, instead, filed a "Rule 56.1 Statement of Supplemental Facts" (Doc. 128) as a separate document, rather than adjoining it to Defendant's Rule 56.1 Statement and producing "a single document" as required by Rule 4(E)(vii) of this Court's Individual Practices. *See Emanuel v. Gap, Inc.*, No. 19-CV-03617, 2022 WL 3084317, at *5 (S.D.N.Y. Aug. 3, 2022) ("Rule 4(E)(vii) of this Court's Individual Practices also requires a Rule 56.1 statement to be submitted as a single document."). Defendants provided responses to each fact in Plaintiff's Supplemental Statement of Facts but request that the Supplemental Statement of Facts "be stricken and not considered" by the Court. (Reply at 1). Given that Defendants provided responses to the

Plaintiff was hired by Dutchess County on February 26, 2007 as a Senior Engineering Aid. (Def. 56.1 Stmt. ¶ 2). Commissioner Balkind assigned Plaintiff to work on the PO-15X bridge project, and Dutcavich served as Plaintiff's supervisor on the project. (*Id.* ¶¶ 9-10). Plaintiff met with Dutchess County EEO Officer, Jody Miller ("Miller"), on April 3, 2017, about perceived discrimination related to his employment with the County. (*Id.* ¶ 11). Plaintiff, during his meeting with EEO Officer Miller, complained that he was being treated differently than his Caucasian counterparts with respect to overtime and promotion opportunities. (*Id.* ¶ 14). Balkind and Dutcavich prepared a memo, dated April 14, 2017, which changed Plaintiff's schedule by adding an hour of straight-time at the end of each day, thus creating overtime for Plaintiff. (Pl. 56.1 Stmt. ¶ 96). On April 23, 2017, Plaintiff filed a Complaint with the EEOC and Union Grievance alleging that Balkind and Dutcavich prepared the April 14, 2017 memo as an "act of reprisal" because Plaintiff went to speak with Miller about the "ongoing discrimination" against him. (*Id.* ¶ 97).

Separately, on April 19, 2017, Laureen Hanlon ("Hanlon"), a secretary at the Dutchess County Department of Public Works, emailed Balkind a photo of a County truck in Plaintiff's driveway. (Def. 56.1 ¶ 37). Hanlon had seen this County truck in Plaintiff's driveway on numerous instances between April 4 and 18, 2017. (*Id.* ¶ 38). Plaintiff thereafter received a letter from Balkind, dated April 20, 2017, informing Plaintiff that Balkind had received a report and photographs that Plaintiff's County-assigned vehicle had been seen parked at his home during times that Plaintiff was "expected to be on the job at the Bridge PO-15x project." (Doc. 121-2). Balkind directed Plaintiff to attend a meeting scheduled for April 27, 2017 "to discuss these allegations" and warned Plaintiff that "this discussion may lead to disciplinary actions against you,

---

facts in Plaintiff's Supplemental Statement of Facts, the Court, in its discretion, will consider it to the extent necessary to adjudicate Defendants' motion for summary judgment.

pursuant to Subdivision 2 of Section 75 of the Civil Service Law." (*Id.*). Plaintiff did not attend the April 27, 2017 meeting. (Def. 56.1 Stmt. ¶ 54). Regina Chiarello ("Chiarello"), Secretary of the Dutchess County Department of Public Works' Engineering Division, requested that Plaintiff meet with Balkind at the end of his shift on May 15, 2017. (*Id.* ¶¶ 56-57). Plaintiff declined to meet with Balkind and instead sent him an email demanding that he "cease and desist from any unlawful acts of reprisal to [Plaintiff's] efforts [of] engaging in protected activity." (Doc. 129-29). Plaintiff also filed a second EEOC Complaint on May 15, 2017, alleging that David Whalen ("Whalen"), Deputy Commissioner of the Dutchess County Department of Public Works, retaliated against him by requesting a meeting with him to discuss Plaintiff's use of the County vehicle. (Doc. 120, Ex. P). Whalen gave Plaintiff notice of a third meeting with Balkind scheduled for May 19, 2017. (Def. 56.1 ¶ 61). Plaintiff did not attend the May 19, 2017 meeting with Balkind. (*Id.* ¶ 66).

Formal disciplinary charges were instituted against Plaintiff for insubordination against his supervisors under Civil Service Law § 75 on May 19, 2017. (*Id.* ¶ 71). A disciplinary hearing was held on June 19, 2017 before Hearing Officer Kenneth Bernstein ("Bernstein"). (*Id.* ¶ 72). Plaintiff did not attend the disciplinary hearing. (*Id.* ¶ 73). The Hearing Officer issued a Report and Recommendation dated June 25, 2017, which concluded that Plaintiff was guilty of insubordination by failing to attend the April 27, 2017, May 15, 2017, and May 19, 2017 meetings. (Def. 56.1 Stmt. ¶ 75). Plaintiff was terminated effective June 28, 2017. (Def. 56.1 Stmt. ¶ 84).

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the

outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[3] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought. "Courts have acknowledged the dangers of summary judgment in discrimination cases: Because direct evidence of discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Osekavage v. Sam's E., Inc.*, 619 F. Supp. 3d 379, 389 (S.D.N.Y. 2022).

## **ANALYSIS**

### I.   Retaliation Claims

Plaintiff presses three retaliation claims under Section 1983, Title VII, and the NYSHRL. The Court will consider Plaintiff's retaliation claims together, as these claims are governed by the same burden of proof. *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343-

6

44 (S.D.N.Y. 2017) (treating retaliation claims under Title VII, § 1983, and the NYSHRL under the same standard), *aff'd*, 788 F. App'x 779 (2d Cir. 2019). The burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs retaliation claims under all three statutes. *See Guzman v. City of New York*, 93 F. Supp. 3d 248, 261 (S.D.N.Y. 2015). "Under this framework, if a plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-retaliatory reason for its action." *Servello v. New York State Off. of Child. & Fam. Servs.*, No. 21-2541, 2022 WL 17411287, at *1 (2d Cir. Dec. 5, 2022). "The plaintiff then must show that the offered justification is pretext for retaliation." *Id.*

A. Phase One: *Prima Facie* Case of Retaliation

"To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). The burden at the summary judgment stage for Plaintiff is "'minimal' and 'de minimis,'" and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). "[A] plaintiff alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Id.* at 845. "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 846.

7

The first requirement of the *prima facie* case is not disputed: Defendants concede that Plaintiff was engaged in protective activities "when he met with [EEO Officer] Jody Miller [on April 3, 2017] and filed two EEOC complaints [on April 23, 2017 and May 15, 2017]." (Def. Br. at 18). The second requirement is also met, as Defendants were aware, by April 26, 2017, that Plaintiff had met with EEO Officer Miller and that he had filed the first EEOC Complaint. (Pl. 56.1 Stmt. ¶ 98). Plaintiff's termination on June 28, 2017 qualifies as an adverse employment action, satisfying the third requirement of the *prima facie* case. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Plaintiff argues, with respect to the fourth element of a causal connection between the alleged adverse action and the protected activity, that "a jury could find a retaliatory motive based upon temporal proximity alone." (Pl. Br. at 17). Although the Second Circuit has "not drawn a bright line to define the outer limits of temporal proximity in the Title VII retaliation context," *Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018), it has held that four months between a protected activity and an adverse employment action was sufficient "to establish causation." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013); *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014) ("five months might be enough to establish a *prima facie* case" of retaliation until Title VII); *Specht v. City of New York*, 15 F.4th 594, 605 (2d Cir. 2021) (holding that a period of five months "is sufficient to permit an inference of causation"). Plaintiff's termination, on June 28, 2017, occurred less than three months after he first met with EEO Officer Miller on April 3, 2017 to complain about discrimination and as such, the temporal proximity between these events is sufficient to establish causation.

Accordingly, Plaintiff has established a *prima facie* case of retaliation and "the burden shifts to [Defendants] to give a legitimate, non-discriminatory reason for [their] actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

B.  Phase Two: Legitimate, Non-Discriminatory Reason

Defendants argue, in support of their contention that Plaintiff's termination was legitimate and non-discriminatory, that Plaintiff was "terminated because he was insubordinate on multiple occasions." (Def. Br. at 18). Defendants argue that Plaintiff's insubordination is evidenced by his repeated refusal to meet with his supervisor to discuss the use of his County assigned vehicle. (*Id.*). This Court, in *McNeil v. Vrandenburgh*, held that "multiple instances of insubordination by [p]laintiff towards his supervisors" constituted a legitimate, non-discriminatory reason for termination. No. 18-CV-09353, 2021 WL 797657, at *7 (S.D.N.Y. Feb. 26, 2021) (collecting cases). Plaintiff's supervisor, Commissioner Balkind, directed Plaintiff to meet with him on three separate occasions—on April 27, 2017, May 15, 2017, and May 19, 2017—to discuss the use of his County-assigned vehicle, which was found parked in his driveway during times when Plaintiff was expected to be on a job site. Commissioner Balkind specifically notified Plaintiff that the conduct to be discussed at these meetings "may lead to disciplinary actions against you, pursuant to Subdivision 2 of Section 75 of the Civil Service Law." (Doc. 121-2). Despite being on-notice that the conduct to be discussed during these meetings could lead to disciplinary actions, Plaintiff refused to attend each of these three meetings. Instead of complying with his supervisor's directives, Plaintiff sent Commissioner Balkind an email on April 26, 2017 accusing him of cyber-bullying and mail fraud. (Doc. 129-22). Plaintiff's repeated insubordination, as in *McNeil*, constitutes a legitimate, non-discriminatory reason for his termination.

C.  Phase Three: Pretext

At phase three of the *McDonnell Douglas* burden shifting analysis, the burden of production and ultimate persuasion shifts back to Plaintiff "to prove that the reasons [Defendants] offered were a pretext for retaliation." *Lopez v. White Plains Hosp.*, No. 22-817, 2022 WL

19835765, at *1 (2d Cir. May 16, 2022). To show that an employer's explanation is a pretext for retaliation, an "employee's admissible evidence must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions by the employer." *Kirkland*, 760 F.3d at 225. The admissible evidence offered by a plaintiff must go beyond "self-serving and conclusory allegations that the defendants' proffered reasons were false." *Hartley*, 785 F. Supp. 2d at 180. "Moreover, an employer's decisions are given deference by the court unless they are clearly pretextual." *Hartley*, 785 F. Supp. 2d at 180 (citing *Deabes v. Gen. Nutrition Corp.*, 415 Fed. App'x 334, 336 (2d Cir. 2011)).

Plaintiff, in his opposition, argues that his termination was pretextual because "[t]here was no policy prohibiting employees from taking their [C]ounty vehicle home for lunch" and that he "answered Balkind's questions about the photograph in his email dated April 26." (Pl. Br. at 19). Plaintiff further argues that employers "do not typically fire their best employees for a first offense." (*Id.*). Plaintiff's arguments, at best, provide his own reasons for why he repeatedly refused to meet with Commissioner Balkind at each of the three scheduled meetings to discuss his use of the County assigned vehicle. Plaintiff's arguments do not excuse his insubordination and more importantly, they do not support a finding or an inference that the true reason for his termination was retaliation against Plaintiff for his protected activities. Indeed, neither Plaintiff's Rule 56.1 Statement nor his opposition affidavit and brief cite to any evidence that would support a finding or an inference that the true reason for his termination was retaliation. Rather, Plaintiff offers only his own self-serving, speculative, and conclusory statements to establish that the legitimate non-discriminatory reasons offered by Defendants were pretextual. This is insufficient proof to create a triable issue of fact. *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (finding that "the only evidence cited in plaintiffs' brief is their own self-serving

testimony" and that because "plaintiffs have made no attempt to square their own speculative, and subjective, testimony with the hard evidence adduced during discovery," the "evidence is insufficient to defeat summary judgment."). Indeed, to be actionable, Plaintiff must offer tangible proof in admissible form and beyond the thoughts ruminating within the four corners of his own mind. The Court finds that no rational trier of fact, even when viewing the evidence in the light most favorable to Plaintiff, could conclude that Defendants' proffered explanations for Plaintiff's termination were merely a pretext for a retaliatory decision. On this score, Plaintiff has failed to adduce any proof that Defendants' legitimate, non-discriminatory reason for Plaintiff's termination, to wit, insubordination, is a pretext for a retaliatory decision.

Accordingly, the Court grants Defendants summary judgment on Plaintiff's retaliation claims under Section 1983, Title VII, and the NYSHRL.

## II.   NYSHRL Aiding and Abetting Claim

Plaintiff, in his Tenth Claim for Relief, presses a claim for aider and abettor liability against Defendants Balkind and Dutcavich under the NYSHRL. (FAC ¶¶ 98-100). "In order for a defendant to be liable as an aider and abettor under § 296(6) of the NYSHRL, a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal." *Alvarado v. United Hospice, Inc.*, No. 20-CV-10790, 2022 WL 4485379, at *21 (S.D.N.Y. Sept. 27, 2022) (citing *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998 (N.Y. 2004)). Plaintiff has failed to establish the existence of a primary violation of the NYSHRL, as discussed *supra*, and as such there can be no aiding and abetting liability.

Accordingly, the Court grants Defendants summary judgment on Plaintiff's aiding and abetting claim under the NYSHRL.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's First Amended Complaint is dismissed with prejudice.

The Clerk of Court is respectfully directed to (i) terminate the motion sequence pending at Doc. 117 and (ii) close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          June 30, 2023

_____
PHILIP M. HALPERN
United States District Judge